IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

M STREET INVESTMENTS, INC.                                    PLAINTIFF

VS.                         CIVIL ACTION NO. 3:13-cv-878(DCB)(MTP)

ZURICH AMERICAN INSURANCE COMPANY,
BELFOR USA GROUP, INC., and
GARY WILBORN a/k/a GARY WILBURN                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendant Belfor USA Group, Inc. ("Belfor")'s motion to dismiss plaintiff's fraud claims **(docket entry 11)**.  Having carefully considered the motion and response, the memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

In August of 2012, the Grand Station Hotel in Vicksburg, Mississippi ("Hotel"), suffered water damage as a result of Hurricane Isaac.  The Hotel is owned by Great Southern Investment Group, Inc., which is a wholly owned subsidiary of M Street Investments, Inc. ("M Street").  M Street had obtained an insurance policy on the Hotel in March of 2012, which was in effect at the time of the property damage.

Belfor specializes in disaster remediation and restoration, and provides property recovery services throughout the United States.  On September 5, 2012, Belfor was hired pursuant to an Authorization for Repairs & Payment agreement to perform mitigation services on the Hotel.  Belfor did remediation work on the Hotel,

and subsequently submitted an invoice for its services to M Street's insurer, Zurich American Insurance Company ("Zurich"). According to Belfor's motion, Zurich examined Belfor's invoice and approved over 98% of Belfor's charges.  On March 12, 2013, Belfor invoiced M Street in the amount of $511,388.34 for the mitigation services performed at the Hotel.

Belfor further alleges that M Street filed the present action seeking to avoid its obligations to Belfor, and that M Street refuses to pay Belfor's invoice even though M Street has received payment from Zurich under M Street's insurance policy for the work performed by Belfor.  M Street's Complaint asserts multiple theories of liability against Belfor, including breach of contract, negligence, civil conspiracy, and fraud.

Belfor contends that M Street's fraud claims are insufficient in that M Street cannot identify a fraudulent statement nor a representative of Belfor who made a fraudulent statement.  Belfor further alleges that M Street's fraud claims do not comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Belfor's motion seeking dismissal of the fraud claims is governed by Federal Rule of Civil Procedure 12(b)(6).

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the [counter-]plaintiff.'" <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004)

(quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In addition, Fed.R.Civ.P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The purpose of Rule 9(b) is to prevent frivolous fraud claims from reaching a jury. See Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc., 115 Fed.Appx. 662, 667 (5th Cir. 2004)(noting that the purpose of Rule 9(b) is to "prevent[] a claimant from searching for a valid

particular claim after filing suit" as well as to protect a defendant from "the harm that general, unsubstantiated fraud accusations will cause")(internal citations omitted)).

State law fraud claims are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b). Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338-39 (5th Cir. 2008). In order to satisfy the pleading requirements of Rule 9(b), the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Id. (citing Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)). Essentially, Rule 9(b) requires the plaintiff to specifically allege the who, what, and when of any fraud claim. See ABC Arbitrage v. Tchuruk, 291 F.3d 336, 349 (5th Cir. 2002).

To determine whether a complaint is sufficiently pled, a court must consider the nine essential elements to recover on a theory of fraud. Those elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. Levens v. Campbell, 733 So. 2d 753, 761-62 (Miss. 1999); see also KLLM Transp. Servs. v. Marsh USA, Inc., 450 Fed.Appx. 406,

4

409 (5th Cir. 2011)(applying the substantive law of Mississippi in a diversity action and citing the nine elements required under Mississippi law to state a fraud claim).

In its Complaint, M Street alleges that Pete Hanrahan, Zurich's adjuster, informed M Street that Zurich would pay for emergency restoration services on the Hotel only if M Street used Belfor for the work.  Complaint, ¶ 31.  The Complaint further alleges:

> Zurich and Belfor agreed that Belfor would perform work on Zurich's insurance claims at specified prices.  Zurich and Belfor agreed that Zurich would supervise and oversee Belfor's work.  Zurich and Belfor agreed that Zurich would determine the scope and the extent of work done. Zurich contracted with Belfor to perform water damage restoration and repairs to the property insured under M Street's policy.
>
> On September 5, 2012, Belfor's representative, "Will," approached M Street with a document titled "Authorization for Repairs & Payment."  The document exhibited Zurich's logo and was generated by Zurich.  Will requested that M Street execute the documents in such a way as to authorize Zurich to make payment directly to Belfor.  M Street refused.  M Street executed the document in such a way that it required Zurich to make payment to M Street, and stated that M Street would be responsible for paying Belfor's bill. ...

Complaint, ¶¶ 32-33.  M Street alleges that Belfor was under the direction and control of Zurich at all times, and that it is also independently liable for its own conduct.  Complaint, ¶¶ 36-37. That independent liability is described as "negligently and/or purposely fail[ing] to properly perform its work at the insured property."  Complaint, ¶ 38.  M Street also alleges that "Belfor

and Zurich engaged in a civil conspiracy to minimize the amount Zurich would have to pay on the insurance claim." Complaint, ¶ 39. In support of the allegation, M Street states that Chuck Shoffner, a Belfor manager, "told Hanrahan that Shoffner had been in the insured building many times prior to Hurricane Isaac, was very familiar with the condition of the property prior to the hurricane, and would support an assertion by Zurich that much of the damage existed prior to Hurricane Isaac. ... Zurich and Belfor conspired to come up with the story of Shoffner's familiarity with 'pre-existing damage' in order to minimize the amount Zurich would have to pay for the claim." Complaint, ¶ 40.

M Street alleges that, as a result of the alleged conspiracy between Zurich and Belfor, it was deprived of the right to choose its own contractor to do the restoration work, incurred damage to the building and personal property, was overcharged by Belfor, and was underpaid on the insurance claim by Zurich. Complaint, ¶ 42. As for fraud, M Street alleges that a representative of Belfor, "Will" (last name unknown) approached M Street about performing emergency restoration services to the Hotel, and that "Will" represented that "Belfor would work for M Street to make the necessary water damage mitigation repairs and adequately dry the building." Complaint, ¶ 43. The Complaint also alleges that, unknown to M Street, Belfor was actually working for Zurich to minimize M Street's insurance claim. Complaint, ¶¶ 39, 43. M

Street alleges that Belfor did not perform the work that was requested by M Street, and that Belfor purposefully failed to adequately mitigate the damages to the hotel. Complaint, ¶ 43. M Street further alleges that the representations were material because they induced M Street to allow Belfor to perform the mitigation services when it would not have otherwise done so. Further, the plaintiff alleges that Belfor and its representative had knowledge of the representation's falsity, and intended that M Street would act on the representations to hire Belfor, so that Belfor could minimize what Zurich owed to M Street while maximizing its own profit. Complaint, ¶¶ 39, 43. M Street also alleges that it had no knowledge of the representations' falsity. Complaint, ¶ 43. Finally, M Street alleges that it suffered consequent and proximate injury as a result of the fraudulent representations, in that the building and its contents incurred further loss and damage. Complaint, ¶ 43.

The Fifth Circuit strictly construes Rule 9(b) and requires a plaintiff pleading fraud "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997). This standard also applies to pleading a state law claim of conspiracy to commit fraud. U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 193 (5th Cir. 2009)("a plaintiff alleging

7

a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts ... taken in furtherance of the conspiracy'")(quoting FC Inv. Group LLC v. IFX Markets, Ltd., 529 F.3d 1087, 1097 (D.C. Cir. 2008)).  If the plaintiff fails to state a claim for fraud underlying its civil conspiracy claim, the civil conspiracy claim must also be dismissed.  Allstate Ins. Co. v. Receivable finance, Inc., 501 F.3d 398, 414 (5th Cir. 2007).

    The Court recognizes that entering into an agreement with the positive intention not to perform that agreement, and failing to disclose that bad intent, is a species of fraud.  See In re Mercer, 246 F.3d 391, 405 (5th Cir. 2001).  Here, the fraud alleged is Belfor's misrepresentation of an intent to perform when it in fact had no intention to perform in the manner reasonably expected by the plaintiff.  That much is clearly pled.  However, other averments in the Complaint are vague and conclusory.  Rule 9(b) requires the plaintiff to identify the speaker(s) and other person(s) who performed allegedly deceptive conduct, how the plaintiff relied on such, how the work done by Belfor was inadequate, how the amounts charged were excessive, who failed to provide an adequate explanation for the inadequacy of the work and the excessiveness of the charges, etc.  This applies to both the fraud and conspiracy to commit fraud claims.  Thus, the claims of fraud and conspiracy to commit fraud must be dismissed.

    The plaintiff also requests leave to amend its complaint to

cure any deficiencies. "In light of the consequences associated with a dismissal on the pleadings and the preference towards adjudicating a case on the merits, 'district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'" Santos v. Nationwide Prop. & Cas. Ins. Co., 2010 WL 4236872, at *2 (S.D. Tex. Oct. 21, 2010)(quoting Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, the plaintiff's allegations of fraud and conspiracy to commit fraud are insufficient to satisfy Rule 9(b)'s particularity requirement. Although the plaintiff has pled that the defendants engaged in fraudulent conduct and/or knowingly concealed certain material information, it has failed to set forth the "who, what, when, where and how" relative to the defendants' alleged fraudulent behavior. Therefore, Belfor's motion to dismiss shall be granted. M Street, however, shall be granted leave to amend its complaint to include allegations sufficient with Rule 9(b)'s requirements.

Accordingly,

IT IS HEREBY ORDERED that defendant Belfor USA Group, Inc.'s motion to dismiss plaintiff's fraud claims **(docket entry 11)** is

GRANTED;

FURTHER ORDERED that plaintiff M Street Investments, Inc., is granted leave to amend its complaint to include allegations sufficient with Rule 9(b)'s requirements by April 26, 2014.

SO ORDERED, this the 28th day of March, 2014.

/s/ David Bramlette<br>
UNITED STATES DISTRICT JUDGE